**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MISSOURI**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **DYLAN WILLIAMS** individually and on behalf of similarly situated persons, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No.: _____ |
| **CROSSROADS COURIER, INC.** | ) ) | **JURY TRIAL DEMANDED** |
| Defendant. | ) ) | |

## PLAINTIFF'S COLLECTIVE AND CLASS ACTION COMPLAINT

Plaintiff Dylan Williams, individually and on behalf of similarly situated couriers, for his Collective and Class Action Complaint against Defendant Crossroads Courier, Inc. states and alleges as follows:

## INTRODUCTION

1.      Despite Defendant labelling its couriers "independent contractors," the law looks to the economic reality of the relationship and not the label placed on the workers. *See Schwieger v. Farm Bureau Ins. Co. of Neb.*, 207 F.3d 480, 484 (8th Cir. 2000). And here, the reality is that Plaintiff and the Class are employees under the law, and Defendant, as their employer, is required to ensure they are properly paid.

2.      Plaintiff brings this case as a collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq*; and as a class action under the Missouri Minimum Wage Law ("MMWL"), R.S.Mo. §§ 290.500 *et seq*, and common law to recover unpaid minimum wages, unpaid time and overtime, improper deductions, and compensatory and liquidated damages owed to himself and similarly situated couriers employed by Defendant.

1

## PARTIES

3.      Plaintiff Dylan Williams is a resident of Independence, Jackson County, Missouri and was employed by Defendant to provide courier services (despite being misclassified as an independent contractor) most recently in July 2016 and remained employed through July 2019. His consent to join this action is attached as **Exhibit A**.

4.      Defendant Crossroads Courier, Inc. is a Missouri corporation with its principal place of business in St. Louis Missouri.

## JURISDICTION AND VENUE

5.       The FLSA authorizes court actions by private parties to recover damages for violations of its wage and hour provisions. Jurisdiction over Plaintiff's FLSA claim is based on 29 U.S.C. § 216(b) and 28 U.S.C. § 1331 (federal question).

6.      The MMWL authorizes court actions by private parties to recover damages for violations of its provisions. Jurisdiction over Plaintiff's MMWL and common law claims are based on 28 U.S.C. § 1367 (pendent claims).

7.      Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to claims occurred and/or emanated from this District. Specifically, Defendant engaged in substantial business here.

## FACTUAL ALLEGATIONS

8.      Defendant is a provider of courier services across the state of Missouri.

9.      Defendant has provided approximately 13 Million deliveries throughout its existence.

10.      To accomplish this, Defendant employs couriers across the country, including in Missouri, to transport nearly anything and everything.

2

11.     Defendant has more than 250 couriers nationwide.

12.     Defendant's couriers all have the same primary job duty of transporting items (which could include medical specimens, letters, live animals, flowers, office supplies, airport shipments, etc… ) from point to point as Defendant's customers request.

13.     Defendant's "Mission" refers to their couriers as employees stating:

> We are a customer driven organization that focuses on excellence in service for our clients and provides a positive work place that encourages individual growth and professional development for our employees. Crossroads Courier promotes ethical business practices and inspires honesty and integrity in the actions of our employees which result in mutually beneficial partnerships with our clients, vendors and team members.

**Defendant's Scheme**

14.     Defendant has a policy of contracting with couriers, knowingly misclassifying them as independent contractors, failing to pay them the statutorily required minimum wages, time and overtime, and making them incur substantial expenses for the primary benefit of Defendant. (Plaintiff and similarly situated couriers, as defined below, are collectively referred to as "Plaintiffs" and "Class Members").

15.     Even though Defendant acts as Plaintiffs employer, it benefits greatly by misclassifying them as independent contractors.

16.     Defendant operates a scheme to treat Plaintiffs as independent contractors and shift its business expenses to its employees.

17.     Defendant requires Plaintiffs to maintain and pay for safe, legally operable, and insured automobiles when providing courier services.

18.     Plaintiffs incur costs for gasoline, automobile parts and fluids, repair and maintenance services, insurance, depreciation, and other automobile expenses while providing courier services for the primary benefit of Defendant.

19.     They are required to buy uniforms from Defendant, pay a fee to use cellular phones that Defendant uses to track courier whereabouts, they are required to pay a fee for using a software application on their respective phone to track their activities on behalf of Defendant, they are also required to pay a fee for contractor management services.

20.     By treating Plaintiffs as independent contractors instead of employees, Defendant has engaged, and continues to engage, in a scheme to avoid paying them worker's compensation, unemployment, social security, payroll taxes owed by employers, and other benefits owed to employees.

21.     Defendant has also attempted, and continues to attempt, to avoid liability under wage protection statutes, federal labor laws, Title VII of the Civil Rights Act of 1964, the Equal Pay Act, the Age Discrimination in Employment Act, the Americans with Disabilities Act (with amendments), and other statutes.

22.     Defendant has shifted, and continues to shift, the cost of its business expenses to its employees. By doing so, Defendant is able to obtain a competitive advantage over competitors that treat employees in compliance with the law.

23.     Defendant's pay practices drive down wages and undercut fair labor practices across the industry.

24.     In addition, Defendant has been unjustly enriched by these practices.

**Plaintiffs Are Defendant's Employees**

25.     Despite classifying them as independent contractors, Defendant treats Plaintiffs like employees.

26.     Plaintiffs are legally the employees of Defendant for numerous reasons, including, but not limited to:

a. Defendant controls Plaintiffs' work by, among other things:

    i. Screening drivers and vehicles used to provide courier services;

    ii. Requiring Plaintiffs to wear a uniform for all delivery activity;

    iii. Requiring Plaintiffs to send daily selfies;

    iv. Requiring Plaintiffs to provide service 24 hours a day and 7 days a week if needed.

    v. Requiring Plaintiffs to keep exclusive availability to work for Defendant during hours marked as available.

b. Defendant provides detailed instructions to Plaintiffs about how to perform their jobs by, among other things:

    i. Setting rules regarding providing courier services;

    ii. Mandating the type of vehicles that can be used;

    iii. Setting the order and manner in which services are to be provided;

    iv. Mandating the type and level of insurance that couriers must maintain;

    v. Requiring use of GPS

c. Defendant requires Plaintiffs to undergo annual training and certifications, including, but not limited to, safety, driver training, and specialized training for particular clients of Defendant.

d. Plaintiffs' services are integrated into Defendant's business operations, *i.e.*, Defendant's entire operation is to provide courier services and Defendant hires Plaintiffs to provide courier services – there is no other service offered by Defendant's business operations.

e. Plaintiffs render their services personally since Defendant:

5

     i.  Requires them to transport items directly from one location to the next and have the recipient of the item sign off that he/she received the item;

    ii.  Requires that Plaintiffs can only utilize their own leased or owned vehicles and not sublet, subcontract or arrange for items to be transported by a third party;

f.  Defendant requires set hours of work dedicated to the timing of providing courier services;

g.  Plaintiffs are discouraged from turning down any assignments;

h.  Plaintiffs have a continuing relationship with Defendant and do not sign new contracts or renew arrangements for working as couriers;

i.  Defendant punishes Plaintiffs if they decline a delivery by reducing the number of assignments they will receive in the future;

j.  Plaintiffs' work schedule is reliant on the timing of trips dictated by Defendant's computerized trip assignment system which is managed through a mobile app that all couriers are required to have on their phones;

k.  Plaintiffs may not perform other work that could interfere with their availability to provide courier services, even to the point that they are required to wait in assigned locations pending a potential need for Defendants to assign a delivery to them;

l.  Defendant monitors Plaintiffs' rides while in progress through GPS tracking;

m.  Plaintiffs are required to perform their services in the order or sequence set by Defendant;

n.  Defendant sets the timing of package pickups and drop-offs and how quickly the delivery had to occur;

6

o.   Plaintiffs are required to submit reports to Defendant upon pick-up and delivery by use of a mobile application or a paper invoice that the customer signs off on;

p.   Requiring paper invoices to be returned the following calendar day;

q.   Plaintiffs are paid per each delivery and payment varies depending on Defendant's agreement with the particular customer;

r.   Defendant can fire Plaintiffs for any reason and without advance notice;

s.   Plaintiffs are presumed to accept each and every pick-up and delivery assigned, are responsible for satisfactory and timely completion of the jobs, and suffer consequences for failure to meet Defendant's expectations regarding completion of the jobs, including verbal reprimands or termination.

**Defendant Fails to Pay Plaintiffs' Minimum Wage and Overtime**

27.   Defendant pays Plaintiffs based on the number of courier trips performed with consideration to the zip code of the deliveries, and amount of time allotted for the distance and speed required for the delivery.

28.   Defendant does not pay Plaintiffs for any time they spend waiting to pick up packages, nor does it pay them for any time they spend on administrative work, nor for wait time between deliveries, or pulling product from Defendant's warehouse for making deliveries.

29.   Defendant also does not pay Plaintiffs for hours worked in excess of 40 per week.

30.   Defendant does not reimburse Plaintiffs for the expenses that they incur performing courier services for the primary benefit of Defendant. Defendant's systematic failure to reimburse constitutes a "kickback" to Defendant such that the wages it pays Plaintiffs are not paid free and clear of all outstanding obligations to Defendant.

7

31.     Plaintiff Williams worked approximately 63 hours per week, about 6 hours of which were spent doing administrative tasks and duties other than driving deliveries, such as pulling orders. On average, in 2017 Defendant paid Plaintiff gross revenues of approximately $942 per week, in 2018 Defendant paid Plaintiff gross revenues of approximately $970 per week and in 2019 Defendant paid Plaintiff gross revenues of approximately $915 per week. But Plaintiff's expenses, which included items such as self-employment tax, fuel, insurance, and maintenance, averaged approximately $542 per week in 2017, $544 per week in 2018 and $508 per week in 2019. Thus, Plaintiff's average net pay was $399 per week in 2017, $425 per week in 2018 and $407 per week in 2019, which equates to an average hourly rate of only $6.35 per hour in 2017, $6.76 per hours in 2018 and $6.47 per hour in 2019.

32.     The federal minimum wage has been $7.25 per hour since July 24, 2009.

33.     The Missouri minimum wage was $7.85 per hour in 2018, $8.60 per hour in 2019, and is $9.45 per hour in 2020.

34.     Defendant's treatment of Plaintiffs as independent contractors causes lost wages, additional tax burdens, insurance obligations, and a variety of other compensable harm.

35.     Defendant, by itself, and by requiring Plaintiffs to incur expenses that are primarily for the benefit of Defendant, charges Plaintiffs for things like uniforms, payroll services, cell phone rental, access to the software application used to track courier deliveries and thereby exacts additional profits from them.

36.     All couriers classified as independent contractors by Defendant had similar experiences to those of Plaintiff Williams. They received similar pay, they incurred similar expenses, and Defendant failed to pay them their wages free and clear.

37.     Defendant's failure to pay Plaintiffs the proper wages required by law is willful.

8

38.     Defendant's unlawful conduct as set forth herein is and has been intentional, willful, and in bad faith, and it has caused significant damages to Plaintiffs.

39.     Defendant is aware or should be aware that the law required it to pay Plaintiffs minimum wages and overtime for each workweek, and that Defendant could not deduct its overhead expenses from its misclassified employees.

## CLASS AND COLLECTIVE ACTION ALLEGATIONS

40.     Plaintiff brings Counts I-II as an "opt-in" collective action on behalf of himself and similarly situated couriers pursuant to 29 U.S.C. § 216 (b).

41.     Specifically, Plaintiff brings Counts I-II on behalf of himself and as the Class Representative of the following persons (the "FLSA Class"):

> All current and former couriers classified as independent contractors who provided courier services in the United States, within three years of the commencement of this action.

42.     This claim may be pursued by those who opt-in to this case pursuant to § 216 (b).

43.     Plaintiff, individually and on behalf of other similarly situated couriers, seeks relief on a collective basis challenging Defendant's practice of failing to pay employees federal minimum wage and overtime. The number and identity of other Plaintiffs yet to opt-in may be ascertained from Defendant's records, and potential Plaintiffs may be notified of the pendency of this action via mail and email.

44.     Plaintiff and all of Defendant's couriers classified as independent contractors are similarly situated in that:

> a.   They have worked as couriers for Defendant;
>
> b.   They have performed courier services using vehicles not owned or maintained by Defendant;
>
> c.   They have been classified as independent contractors;

d. They have incurred costs and expenses while performing courier services for the primary benefit of Defendant;

e. They have been subject to similar pay rates; and

f. They have been subject to the same policy of failing to pay for all time worked, failing to pay overtime, and failing to reimburse for business expenses.

45. Plaintiff brings Counts III-V as a class action pursuant to Fed. R. Civ. P. 23, on behalf of himself and as the Class Representative of the following persons (the "Wage Class"):

> All current and former couriers who were classified as independent contractors who performed courier services in the State of Missouri, within two years of the commencement of this action.

46. Counts III-V, if certified for class-wide treatment, are brought on behalf of all similarly situated persons who do not opt-out of the Class.

47. Plaintiff's state law claims asserted in Counts III-V satisfy the numerosity, commonality, typicality, adequacy, predominance and superiority requirements of a class action pursuant to Fed. R. Civ. P. 23.

48. Numerosity: On information and belief, there are hundreds of individuals who provide courier services for Defendant in the State of Missouri, satisfying the numerosity requirement.

49. Common questions of law or fact: There are several questions of law or fact common to the Class, including, but not limited to:

a. Whether Defendant's classification of Plaintiffs as independent contractors is lawful;

b. The standard for determining whether Defendant is an employer;

c. Whether Defendant improperly shifted its business expenses to Plaintiffs; and

10

d.  Whether Defendant was unjustly enriched by the acts and omissions complained of herein.

50.  Typicality: A class action is appropriate because Plaintiff's claims are typical of the claims of the Class he seeks to represent. Plaintiff and Class Members work or have worked for Defendant, must have provided courier services for Defendant, and have been subjected to common classification as independent contractors and policies regarding pay.

51.  Adequacy of Class Representative: Plaintiff has pledged to protect the interests of the Class and has been fairly chosen to do so.

52.  Adequacy of Class Counsel: Plaintiff's counsel have litigated and certified a substantial number of class and collective action cases, including involving independent contractor misclassification.

53.  A class action is appropriate because the prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications with respect to individual class members and establish incompatible standards of conduct.

54.  A class action is appropriate because Defendant has acted on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

55.  A class action is appropriate in that questions of law or fact common to the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

**COUNT I - VIOLATION OF FLSA - MINIMUM WAGE**

56.  Plaintiff hereby incorporates all relevant allegations of the foregoing paragraphs as though fully set forth herein.

57.     At all relevant times herein, Plaintiff and all other similarly situated couriers in the FLSA Class have been entitled to the rights, protections, and benefits provided under the FLSA, 29 U.S.C. §§ 201 *et seq*.

58.     Plaintiffs were employed by Defendant. During the relevant time frame, Plaintiffs performed work for Defendant as employees and are properly classified as employees.

59.     Section 13 of the FLSA, 29 U.S.C. § 13, exempts certain categories of employees from federal minimum wage obligations, but none of the FLSA exemptions apply to Plaintiff or other similarly situated couriers.

60.     The FLSA regulates, among other things, the payment of minimum wage by employers whose employees are engaged in interstate commerce, or engaged in the production of goods for commerce, or employed in an enterprise engaged in commerce or in the production of goods for commerce. 29 U.S.C. § 206(a).

61.     Defendant is subject to the FLSA's minimum wage requirements because it is an enterprise engaged in interstate commerce, and its employees are engaged in interstate commerce.

62.     Under section 6(a) of the FLSA, 29 U.S.C. § 206(a), employees have been entitled to be compensated at a rate of at least $7.25 per hour since July 24, 2009.

63.     As alleged herein, Plaintiffs' hours worked and expenses incurred for the primary benefit of Defendant have caused Plaintiffs' wages to fall beneath the federal minimum wage.

64.     Defendant knew or should have known that its pay and deduction policies, practices, and methodologies would result in failure to compensate couriers at the federal minimum wage.

65.     Defendant, pursuant to its policies and practices, violated the FLSA, and continues to violate the FLSA, by refusing and failing to pay federal minimum wage to Plaintiff and other similarly situated couriers.

66.     Plaintiff and all similarly situated couriers are victims of a uniform and employer-based compensation policy. This uniform policy, in violation of the FLSA, has been applied, and continues to be applied, to all Defendant's couriers who Defendant misclassified as independent contractors and who contracted with Defendant to provide courier services.

67. Plaintiff and all similarly situated employees are entitled to damages equal to the minimum wage less actual wages received, after expenses, within three years from the date each Plaintiff joins this case, plus periods of equitable tolling, because Defendant acted willfully and knew, or showed reckless disregard for, whether its conduct was unlawful. Defendant has acted neither in good faith nor with reasonable grounds to believe that its actions and omissions were not a violation of the FLSA, and as a result, Plaintiff and other similarly situated couriers are entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid minimum wages under 29 U.S.C. § 216(b). Alternatively, should the Court find Defendant acted in good faith and with reasonable grounds to believe its actions were lawful, Plaintiff and all similarly situated employees are entitled to an award of prejudgment interest at the applicable legal rate.

WHEREFORE, Plaintiff and all similarly situated couriers in the FLSA Class demand judgment against Defendant and request: (1) compensatory damages; (2) liquidated damages; (3) attorneys' fees and costs as allowed by Section 16(b) of the FLSA; (4) pre-judgment and post-judgment interest as provided by law; (5) a declaration that Defendant has violated the FLSA; (6) that notice be sent to a class of similarly situated Plaintiffs; and (7) such other relief as the Court deems fair and equitable.

## COUNT II - VIOLATION OF FLSA - OVERTIME

68. Plaintiff hereby incorporates all relevant allegations of the foregoing paragraphs as though fully set forth herein.

69.     At all relevant times herein, Plaintiff and all other similarly situated couriers in the FLSA Class have been entitled to the rights, protections, and benefits provided under the FLSA, 29 U.S.C. §§ 201 *et seq*.

70.     Plaintiffs were employed by Defendant. During the relevant time frame, Plaintiffs performed work for Defendant as employees and are properly classified as employees.

71.     Section 13 of the FLSA, 29 U.S.C. § 13, exempts certain categories of employees from federal minimum wage obligations, but none of the FLSA exemptions apply to Plaintiff or other similarly situated couriers.

72.     The FLSA regulates, among other things, the payment of overtime compensation by employers whose employees are engaged in interstate commerce, or engaged in the production of goods for commerce, or employed in an enterprise engaged in commerce or in the production of goods for commerce. 29 U.S.C. § 206(a).Defendant is subject to the FLSA's overtime requirements because it is an enterprise engaged in interstate commerce, and its employees are engaged in interstate commerce.

73.     Under section 7 of the FLSA, 29 U.S.C. § 207, employees are entitled to be compensated at a rate not less than one and one-half times the regular rate of pay for hours worked over 40 per workweek.

74.     As alleged herein, Defendant did not compensate Plaintiffs for all hours worked, including time spent waiting to pick up or drop off deliveries, gathering product for delivery, and

performing administrative tasks, let alone hours worked over 40 per workweek, which regularly resulted in failure to pay Plaintiffs overtime.

75.     Defendant knew or should have known that its pay policies, practices, and methodologies result in failure to pay couriers overtime.

76.     Defendant, pursuant to its policies and practices, violated the FLSA, and continues to violate the FLSA, by refusing and failing to pay overtime to Plaintiff and other similarly situated couriers.

77.     Plaintiff and all similarly situated couriers are victims of a uniform and employer-based compensation policy. This uniform policy, in violation of the FLSA, has been applied, and continues to be applied, to all Defendant's couriers who Defendant misclassified as independent contractors and contracted with Defendant to provide courier services.

78.     Plaintiff and all similarly situated employees are entitled to damages equal to overtime pay for all hours worked over 40 per workweek, within three years from the date each Plaintiff joins this case, plus periods of equitable tolling, because Defendant acted willfully and knew, or showed reckless disregard for, whether its conduct was unlawful.

79.     Defendant has acted neither in good faith nor with reasonable grounds to believe that its actions and omissions were not a violation of the FLSA, and as a result, Plaintiff and other similarly situated couriers are entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid overtime under 29 U.S.C. § 216(b). Alternatively, should the Court find Defendant acted in good faith and with reasonable grounds to believe its actions were lawful, Plaintiff and all similarly situated employees are entitled to an award of prejudgment interest at the applicable legal rate.

15

WHEREFORE, Plaintiff and all similarly situated couriers in the FLSA Class demand judgment against Defendant and request: (1) compensatory damages; (2) liquidated damages; (3) attorneys' fees and costs as allowed by Section 16(b) of the FLSA; (4) pre-judgment and post-judgment interest as provided by law; (5) a declaration that Defendant has violated the FLSA; (6) that notice be sent to a class of similarly situated Plaintiffs; and (7) such other relief as the Court deems fair and equitable.

## COUNT III - VIOLATION OF MMWL – MINIMUM WAGE

80.     Plaintiff hereby incorporates all relevant allegations of the foregoing paragraphs as though fully set forth herein.

81.     At all relevant times herein, Plaintiff and all other similarly situated couriers in the Wage Class have been entitled to the rights, protections, and benefits provided under the MMWL, R.S.Mo. §§ 290.500 *et seq.*

82.     Plaintiffs were employed by Defendant. During the relevant time frame, Plaintiffs performed work for Defendant as employees and are properly classified as employees.

83.     Defendant contracted with Plaintiffs from Missouri.

84.     None of the MMWL exemptions apply to Plaintiff or other similarly situated couriers.

85.     The MMWL regulates, among other things, the payment of minimum wage by employers to Missouri employees. R.S.Mo. § 290.502.

86.     Defendant is subject to the MMWL's requirements since it is not a retail or service business whose annual gross sales are less than $500,000.00.

16

87. Under the MMWL, Missouri employees have been entitled to be compensated at a rate of at least $7.85 per hour in 2018, $8.60 per hour in 2019, and $9.45 per hour in 2020. R.S.Mo. § 290.502.

88. As alleged herein, Plaintiffs' hours worked and expenses incurred for the primary benefit of Defendant caused the wages of Plaintiff and all other similarly situated couriers in the Wage Class to fall beneath the Missouri minimum wage.

89. Defendant, pursuant to its policies and practices, violated the MMWL, and continues to violate the MMWL, by refusing and failing to pay Missouri minimum wage to Plaintiff and other similarly situated couriers in the Wage Class.

90. Plaintiff and all similarly situated couriers in the Wage Class are victims of a uniform and employer-based compensation and deduction policy. This uniform policy, in violation of the MMWL, has been applied, and continues to be applied, to all Defendant's couriers in Missouri who Defendant misclassified as independent contractors and contracted with Defendant to provide courier services.

91. Plaintiff and all similarly situated employees in the Wage Class are entitled to damages equal to the full amount of the wage rate minus actual wages received, after expenses, and an additional amount equal to twice the unpaid wages as liquidated damages, within two years from the date Plaintiff filed this lawsuit, plus periods of equitable tolling. § 290.527.

WHEREFORE, Plaintiff and all similarly situated couriers in the Wage Class demand judgment against Defendant and request: (1) compensatory damages; (2) liquidated damages; (3) attorneys' fees and costs as allowed by Section 290.527; (4) pre-judgment and post-judgment interest as provided by law; (5) a declaration that Defendant has violated the MMWL; (6) that

notice be sent to a class of similarly situated Plaintiffs; and (7) such other relief as the Court deems fair and equitable.

## COUNT IV – VIOLATION OF MMWL – UNPAID TIME AND OVERTIME

92.     Plaintiff hereby incorporates all relevant allegations of the foregoing paragraphs as though fully set forth herein.

93.     At all relevant times herein, Plaintiff and all other similarly situated couriers in the Wage Class have been entitled to the rights, protections, and benefits provided under the MMWL, R.S.Mo. §§ 290.500 *et seq.*

94.     Plaintiffs were employed by Defendant. During the relevant time frame, Plaintiffs performed work for Defendant as employees and are properly classified as employees.

95.     Defendant contracted with Plaintiffs from Missouri.

96.     None of the MMWL exemptions apply to Plaintiff or other similarly situated couriers.

97.     The MMWL regulates, among other things, the payment of all time worked and overtime by employers to Missouri employees. R.S.Mo. § 290.505.

98.     Defendant is subject to the MMWL's requirements since it is not a retail or service business whose annual gross sales are less than $500,000.00.

99.     Under the MMWL, Missouri employees have been entitled to be compensated at a rate of not less than one and one-half times the regular rate at which they are employed for hours worked in excess of 40 per workweek. R.S.Mo. § 290.505.

100.     As alleged herein, Defendant did not compensate Plaintiffs for all hours worked, including time spent waiting to pick up or drop off deliveries and performing administrative tasks, let alone hours worked over 40 per workweek, which regularly resulted in failure to pay Plaintiffs overtime.

18

101.    Defendant, pursuant to its policies and practices, violated the MMWL, and continues to violate the MMWL, by refusing and failing to pay for all time worked and overtime to Plaintiff and other similarly situated couriers in the Wage Class.

102.    Plaintiff and all similarly situated couriers in the Wage Class are victims of a uniform and employer-based compensation policy. This uniform policy, in violation of the MMWL, has been applied, and continues to be applied, to all Defendant's couriers in Missouri who Defendant misclassified as independent contractors and contracted with Defendant to provide courier services.

103.    Plaintiff and all similarly situated couriers in the Wage Class are entitled to damages equal to their overtime pay, and an additional amount equal to twice the unpaid wages as liquidated damages, within two years from the date Plaintiff filed this lawsuit, plus periods of equitable tolling. § 290.527

WHEREFORE, Plaintiff and all similarly situated couriers in the Wage Class demand judgment against Defendant and request: (1) compensatory damages; (2) liquidated damages; (3) attorneys' fees and costs as allowed by Section 290.527; (4) pre-judgment and post-judgment interest as provided by law; (5) a declaration that Defendant has violated the MMWL; (6) that notice be sent to a class of similarly situated Plaintiffs; and (7) such other relief as the Court deems fair and equitable.

## COUNT V-UNJUST ENRICHMENT

104.    Plaintiff hereby incorporates all relevant allegations of the foregoing paragraphs as though fully set forth herein.

105.    Plaintiff and all similarly situated employees in the Wage Class were required to have vehicles that were in working order to perform their job duties for Defendant, as well as

safety equipment, insurance, workers' compensation, and otherwise pay for payroll taxes, accounting and legal services, gas, repairs, and maintenance in support of their effort to provide courier services on behalf of Defendant. Defendant did not reimburse them for the cost of the vehicles, maintenance of the vehicles, equipment they purchased, and/or expenses (such as uniform purchases and other fees) they incurred for the primary benefit of Defendant.

106.   Plaintiff and all similarly situated employees in the Wage Class were employees of Defendant. As such, they should have been reimbursed for all reasonable expenses they incurred in the performance of their required job duties. Defendant was unjustly enriched by not having to pay for the vehicles, vehicle maintenance, equipment, and/or other expenses (such as uniform purchases and other fees) they incurred for the primary benefit of Defendant.

107.   It would be inequitable and unjust for Defendant to retain these wrongfully retained business expenses.

108.   Defendant's retention of these wrongfully-retained expenses would violate the fundamental principles of justice, equity, and good conscience.

109.   Plaintiff and the Wage Class are entitled to restitution of the profits unjustly obtained by Defendant, plus interest.

WHEREFORE, Plaintiff and all similarly situated couriers in the Wage Class demand judgment against Defendant and request: (1) compensatory damages (2) pre- and post-judgment interest as provided by law; (3) that notice be sent to a class of similarly situated Plaintiffs; and (4) such other relief as the Court deems fair and equitable.

### DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all causes of action and claims with respect to which Plaintiff has a right to jury trial.

Respectfully Submitted,

**REAVEY LAW LLC**

/s/ Kevin C. Koc
Patrick G. Reavey MO# 47365
Kevin C. Koc MO# 56955
Livestock Exchange Building
1600 Genessee Suite 303
Kansas City, MO 64102
Ph: 816.474.6300
Fax: 816.474.6302
Email: preavey@reaveylaw.com
Email: kkoc@reaveylaw.com

**ATTORNEYS FOR PLAINTIFF**